The next and last argued case on our calendar is Richard Lynch versus the City of New York. Thank you. Morning, Counsel. Good morning, Your Honor, and may it please the Court. My name is Plaintiff Appellant Richard Lynch, who is here in the courtroom today. In ruling upon the defendant's motion to dismiss on the pleadings, in numerous instances the District Court erred by considering the facts and drawing inferences from the facts and the like most favorable to the defendants. At this stage of the proceedings, what inferences do we draw on the pleadings in front of us? Well, the most important inference is that Officer Mandy never saw Mr. Lynch do anything at all other than standing on the sidewalk. What does Mr. Lynch say he was doing? Mr. Lynch said that he had caught up to the back of the march at 104th Street, and the only time he was in the roadway at 104th Street is when he crossed from the north sidewalk to the south sidewalk. He crossed the street. He crossed the street. Not probable cause in ordinary parlance. No, if that's probable cause, then every single person in this courthouse who came to work this morning had a vehicle in traffic law at some point and could be arrested for violating vehicle and traffic law 1156A. But most important... On what basis did the District Court find probable cause? On that statute. And it's important to note at the outset that the defendants in the lower court did not raise 1156A of the vehicle and traffic law until their reply brief. Initially, the only section of the penal law which prohibited loitering while being masked with other people being masked. He wasn't wearing a mask this day, was he? He had a mask and he was wearing it, but you don't violate that statute unless there's other people masked with you. So when I pointed that out in opposition, they then changed the theory under which they were attempting to justify the arrest to vehicle and traffic law 1156A only in their reply brief. If there's no probable cause, this whole house of cards fails, is that correct? Well, I think that's correct. I mean, the determination that there was probable cause was the justification for Judge Breska throwing out pretty much every other claim, though strictly... Some of the claims are a reach you would concede, counsel? A reach? Perhaps? No, I'm afraid... To the outer limits of our jurisprudence? I actually don't think they were reach. I think that was pretty carefully pled in every respect. If there's some particular claim your honor thinks is a reach, I'll be happy to go right to that and address that. You want to talk about paverment? Paverment, yes, your honor. So it was pled that the NYPD Legal Bureau has a very disturbing pattern and practice going all the way back to at least the 2004 mass arrests at the Republican National Convention, whereby only for demonstrations, NYPD legal personnel come and collude with the arresting officer so that the arresting officer will fabricate entirely false... And that's your allegations, right? That the arresting officer will fabricate having seen something that they didn't actually see? Absolutely, and that is... Your honor asked what the inferences were. The reason one can infer that Officer Mandy never saw Mr. Lynch do anything other than be standing on the south sidewalk of 104th Street is Mandy lied on three summonses that Mr. Lynch was going westbound in the middle of the roadway, had stood in front of a gray Toyota Camry at some point impeding the eastward flow of vehicular traffic, and that Officer Mandy had herself told Mr. Lynch to go to the sidewalk and that Mr. Lynch refused to go to the sidewalk. All of that is utterly false. All of that is a lie on all three of the summonses. All Mr. Lynch did at 104th Street is cross from the north sidewalk to the south sidewalk, and then out of nowhere, without a word, Officer Mandy and another officer grabbed him and threw him into a van with great force, causing him very severe physical injuries, and then took him down to the precinct where he was held. He was purposely denied food and water and use of the bathroom by Deputy Inspector Lombardo, who already knew him and engaged in a stare down with him. Mr. Lynch, it's been pled as a known factor to those who police demonstrations in New York. He's been demonstrating going back a long way. They've his house to ask him questions in the past. Lombardo knew him, and the inferences to be drawn from the facts pled is that Mr. Lynch was purposely targeted for an unlawful and gratuitously violent arrest, false charges on the summonses, and denial of use of the bathroom and having food and water while in custody solely because of the content of his speech, the viewpoint of his speech, that he was in a Black Lives Matter demonstration. They didn't like him for that, and they also didn't like him even before that for his other advocacy, and it's been pled that the NYPD Legal Bureau has been engaged in this sort of suborning of perjury by arresting officers going back to the 2004 Republican campaign. Serious charges you make. Pardon me? Very. Serious charges. Very. We've been shouting from the rooftop about this for about a dozen years now, and we had some strong language that's been pled in the amended complaint by Judge Karras and Magistrate Judge Francis during the 2004 Republican convention. Judge Castell in the Maram case, which is cited in the amended complaint, reinstated fabrication of evidence claims against an NYPD legal attorney based on this, and all indications are that this is what happened here as well. There's a note in Officer De La Rosa's memo book, who was the arresting for the other plaintiff who did not appeal, that as per Officer Mandy, who fabricated the accusations against plaintiff, and as per Deputy Inspector Lombardo, who was in charge of the whole policing effort for the strategic response group, a consultation was had with Attorney Paverman, and then ten minutes later, the summonses were issued to the other plaintiff, Ms. Rye, containing all the falsehoods against her, and there's every reason to believe that because Officer Mandy was involved in that collusion to fabricate false charges, that Mandy also met with Lombardo and Attorney Paverman to have the same thing happen. They're extremely grave charges, and we're hoping to address them in this suit, and we've pled in detail facts that make this not just speculative, but there's a long pattern of this, and this fits the pattern to an exact congruence. Thank you. You've reserved some time for about all. Yes, Your Honor. Thank you. Good morning. It's still morning. It is, Your Honor. Good morning. I'm Melanie West for the City of New York. So, counsel, at this stage of the proceedings, we're supposed to draw all inferences against the movement. Isn't that correct? It's not basic law? Yes, Your Honor. Absolutely. So, the movement here claims that he was just crossing the street. Where does that lead to probable cause? Well, Your Honor, I think that this Court has held in many cases involving protests that context matters, and so it's not just that Mr. Lynch was crossing the street. It's the perspective of a reasonable police officer that determines whether there was probable cause, and what was happening here was... All inferences, however, in favor of the non-movement. Correct, Your Honor, but it still is from the perspective of the arresting officer whether there was, you know, an objectively reasonable officer would have found there to be probable cause. Based on Mr. Lynch's allegation that all he did was cross the street. Right. So, even though we look at the if what he says has to be taken as true at this point, all he did was cross the street. What reasonable police officer would find probable cause in crossing the street? Well, Your Honor, context matters, and what we had here was... Yes, I know context matters, but that's what he said he did, and we take that as true. Yes, Your Honor. He said he was crossing the street. Yes, but what we know a reasonable police officer on the scene saw was numerous people, and it's undisputed from the complaint that there were numerous protesters in the street, that there was an order to remain on the sidewalk, that other protesters were blocking traffic, and that Mr. Lynch was in the street immediately prior to his arrest. So, from the perspective of a reasonable police officer, it might not be immediately apparent that his intent was just to cross the street. There's no allegation that he was crossing, you know, legally at a crosswalk. That's what he said he was doing. I'm sorry, but did you say something? The summons says he was standing in the street. It does. The complaint says other than crossing the street, he was not standing in the street. He was not standing, other than crossing the street, he was not in the street at the time cited in the summons. Yes, Your Honor, but I would submit that that's not contradictory. Context matters more when facts are being decided, but when the court is trying to decide whether a complaint states a cause of action and is required to accept as true all of the factual allegations in the complaint, it's difficult to see how the summons can be accepted as true when it's exactly contradicted. I'm having difficulty hearing, Judge Geers. I'm sorry? I'm having difficulty hearing. Sorry. I'm saying that it seems difficult to see how the court on a Rule B6 motion or a Rule 12c motion can accept as true the assertions in the summons when the complaint has an allegation that's diametrically contradictory in terms of what the plaintiff was doing. Well, Your Honor, I'm not sure that I would agree that it's diametrically contradictory because what we know is that Mr. Lynch was slowly crossing the street immediately prior to his arrest, assuming what he says is true. Exactly, and so from the perspective of a police officer who is scanning a large protest, looking for protesters who are in the street, I don't think it's contradictory that what a police officer saw was him in the street, a street that undisputedly was not closed to traffic, so there was vehicular traffic in the street at the time, and that he wasn't crossing at a crosswalk or anything like that. He says it wasn't a crosswalk. He says it was at the crosswalk of 103rd Street. Your Honor, I apologize. My reading of the complaint was that he was crossing at 104th Street from the north side to the south side. We'll ask counsel. But that's what he said he was doing. So I ask you again, where was the probable cause to arrest? This was an unpermitted protest where the street was open and vehicles were in the street. Protestors had been asked to stay on the sidewalks, and yet they were blocking, other protesters were blocking vehicles in the street. But you arrested Mr. Lynch. Well, from the perspective of a police officer who was policing an extremely volatile situation where undisputedly people were blocking traffic in the street, seeing a person standing in the street amidst vehicular traffic gave rise to probable cause under the circumstances here. Well, he doesn't say he was slowly crossing. He does not say, he says he was not standing. Well, he, he, the summons says he was standing. The reason I say he was slowly crossing were too slowly crossing. He does say he was moving very slowly because of his surgery immediately prior to this protest. Other than crossing the street from one sidewalk to the other sidewalk at West 104th Street, plaintiff Richard Lynch was not in the roadway at the location cited in the summons. Correct, your honor. But nevertheless, he was in the roadway immediately prior to his arrest. And what we know from the complaint as a whole is that protesters were being arrested for being in the street, a street that was not closed off, a street that was open to vehicular traffic. Those facts give rise at least, if not to probable cause, then to arguable probable cause. For, for, for all the reason, for all the three bases that the summons were issued for being, for, for being in the street despite an order to And, and your honor, to the extent that there is probable cause or at the, at a minimum arguable probable cause that also defeats the malicious prosecution claim, the first amendment retaliation claim and the abuse of process claim. Well, that all relies on this court concluding that the officers were correct in seeing probable cause to arrest or arguable probable cause to erect. If we take what Mr. Lynch said is true, there is no probable cause. He said he was crossing the street. I, I disagree, your honor. I think that you can take the complaint, everything in the complaint is true. Tell me what he says in his complaint that would lead you to find probable cause or arguable probable cause. Do you have the complaint in front of you? Just tell me what you think would lead to arguable probable cause. That he was in the street, your honor, during an unpermitted protest when protesters had been asked not to be in the street. He was crossing the street. That's what he claimed. But from the perspective of a reasonable police officer looking for protesters who were in the street amidst vehicular traffic, it wouldn't be clear whether or not he was crossing the street. So the police officer says, what are you doing? He says, I'm crossing the street. I mean, it's your honor. I don't think it's a reasonable police officer can be expected to approach every protester who's in the street despite an order. What do we think a reasonable police officer will arrest everyone they see? He said he was standing. I'm reading from paragraph 53 of his complaint on the south sidewalk. And while he was there, it says he crossed from the north sidewalk of 104th Street to the south sidewalk. That's what he said. That's paragraph 52. And then while he was standing on the sidewalk, not in the street, he was, they grabbed him and arrested him. That's what, that's what he says. That's what we have to take as true. What, where's the probable cause? Your honor, the complaint says, the complaint acknowledges that there was at paragraph 15 that the NYPD directed marchers to get out of the roadway during the course of the march. It acknowledges that there was vehicular traffic in the street, that the co-plaintiff here was standing in front of a car. And that police officers. But not. Right. But your honor, in other cases, like for example, Garcia versus Bloomberg, this court has held that it's not a protest, not even where there's, you know, reasonable, lots of reasons to believe that not every protester heard an order to disperse, that not everyone was on notice. From the reasonable police officer's perspective, there's still probable cause where an order to disperse has been given. And yet a protester is in the street blocking vehicular traffic, regardless of that person's intent, which may well have been just across the street, from the perspective of a reasonable police officer who knows that an order to disperse has been given, who knows that the protest is not permitted, that the street is not cordoned off, that vehicular traffic is attempting to move through a roadway while people are blocking it, then to see a person standing in the street gives rise to probable cause, or at the very least, arguable probable cause for their arrest. I see that I'm almost out of time, Your Honor, so unless this court has any other questions, I'll rely on the mic. Thank you. Mr. Rossman? Yes, Your Honor. The circumstances that opposing counsel has just presented to the panel as fact has nothing to do with what's pled at all. There was nothing in the pleadings from which one could infer that there were a lot of demonstrators in the street at 104th Street when Mr. Lynch was placed under arrest while he was standing on the sidewalk. The only other person that was discussed as ever being in the street was Ms. Rye, who was at the middle front of the march and who had been arrested earlier, prior to Mr. Lynch. Actually, what was pled about what was blocking vehicular traffic at the scene were the NYPD police cars in the roadway at 104th Street. Other than that, there's not a wisp of a suggestion that there were any protesters blocking traffic. The whole theory of qualified immunity is to keep public officials, like police officers, from having to go through a trial when they have other important business to do. How does that policy square with the fact there was a big demonstration, people were yelling, you said he was wearing a mask, but not at the moment of arrest. So why don't the police get at least the benefit of the doubt? Well, Your Honor, qualified immunity was never meant to protect officers who knowingly violate the law, and it was never meant to protect officers who purposely fabricate evidence in to protect members of the NYPD who purposely retaliate against somebody solely for the exercise of their First Amendment rights. And those are what's both been pled explicitly in the amended complaint, and also what could be inferred from the complaint, if you take the inferences in the light most favorable to the plaintiff. Discovery would allow a fact finder to find out if there really was, if it really was, in the view of a reasonable officer, a situation so dangerous that Mr. Lynch had to be arrested. That's what Discovery is for, isn't it? Well, I agree. Discovery will certainly elucidate the actual conditions at the scene, and then there will be an actual factual record, both at summary judgment. Was there filming of this event? The only footage I know of was of Ms. Rye's arrest that was prior to Mr. Lynch arriving on the scene. That was improperly relied on by the defendants on the motion to dismiss, because it wasn't part of the pleadings, but it is part of the record. I tried to access it last night. We provided only a link to Your Honors, because it really doesn't have to do with Mr. Lynch. That was not accessible. If Your Honors wish to see it, we'll, of course, be happy to. No, thanks. No. Okay. Well, it's one last point. Your Honor asked, if I may, Your Honor asked if the whole case is reliant on the probable cause determination. I agree that Judge Preska threw out all the other claims because she found that probable cause existed. However, of course, certain claims, like Mr. Lynch's excessive force claims, can stand on their own, even if there is probable cause or arguable problem. Before I let you go, Judge Winter, did you have any other questions? No. Okay. We'll reserve decision. Thank you both. Thank you, Your Honors. That's the last case being argued this morning, so I will ask the clerk to adjourn court. Court is adjourned.